# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**MAPLEBEAR INC. D/B/A INSTACART**<br><br>Defendant. | **Civil Action No: 6:20-cv-00737-ADA**<br><br>**PATENT CASE**<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND IMPROPER VENUE, OR IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

FISH & RICHARDSON P.C.
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
Ricardo J. Bonilla
rbonilla@fr.com
Texas Bar No. 24082704

1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

*Attorneys for Defendant*
*Maplebear Inc. d/b/a Instacart*

## TABLE OF CONTENTS

I.   STATEMENT OF ISSUES ................................................................................................. 1

II.  FACTS ............................................................................................................................... 2

III. LEGAL STANDARD AND APPLICABLE LAW ............................................................ 3

IV.  ARGUMENT ..................................................................................................................... 4

    A.  Instacart Does Not "Reside" in the Western District of Texas ........................................ 5

    B.  Instacart Has No "Physical Place" or "Regular and Established Place of
        Business" in the Western District of Texas ...................................................................... 5

        1.  This Action "Could Have Been Brought" in the Northern District of California ........ 9

        2.  Private Interest Factors Favor Transfer to the Northern District of California ............ 9

        3.  The Public Interest Factors Favor Transfer to the Northern District of
            California ................................................................................................................... 11

    D.  Allegations of willful infringement are deficient and should be dismissed. ................... 13

        1.  GGS's allegations of pre-suit willfulness should be dismissed................................. 13

        2.  GGS's allegations of post-suit willfulness should be dismissed. .............................. 14

V.   CONCLUSION ................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                       Page(s)

*In re Adobe Inc.*,
   No. 2020-126, 2020 WL 4308164 (Fed. Cir. July 28, 2020)..........................................8, 9, 12

*Bd. of Regents, the Univ. of Tex. Sys. v. Boston Sci. Corp.*,
   No. 1:17-cv-1103, ECF No. 27 (W.D. Tex. Mar. 12, 2018).......................................................7

*In re BigCommerce, Inc.*,
   890 F.3d 978 (Fed. Cir. 2018)..................................................................................................4

*CDx Diagnostic, Inc. v. United States Endoscopy Grp., Inc.*,
   No. 13-CV-5669(NSR), 2018 WL 2388534 (S.D.N.Y. May 24, 2018)....................................7

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017).......................................................................................4, 5, 6, 7

*CUPP Cybersecurity LLC v. Symantec Corp.*,
   No. 3:18-CV-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ....................................8

*Flash-Control, LLC v. Intel Corp.*,
   C.A. No 1:19-cv-1107-ADA, No. 35 (W.D. Tex. Oct. 31, 2019) ...........................................14

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)..........................................................................................9, 10

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)................................................................................................11

*In re HP Inc.*,
   2020 WL 5523561 (Fed. Cir. Sept. 15, 2020) ........................................................................11

*L & H Concepts LLC v. Schmidt*,
   No. 6:07 CV 65, 2007 WL 4165259 (E.D. Tex. Nov. 20, 2007)..............................................4

*M & C Innovations, LLC v. Igloo Prod. Corp.*,
   No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) .........................................14

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
   No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)..................................14

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   No. 6:19-cv-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)
   (Albright, J.).................................................................................................................13, 14, 15

*Pers. Audio, LLC v. Google, Inc.*,
   280 F. Supp. 3d 922 (E.D. Tex. 2017)......................................................................................8

*Phillips v. Baker*,
  121 F.2d 752 (9th Cir. 1941) ..............................................................................................6

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017) .......................................................................................................3

*Uniloc 2017 LLC v. Google LLC*,
  2020 WL 3064460, No. 2:18-cv-00504-JRG-RSP (E.D. Tex., 2020) .................................9

*Uniloc USA Inc. v. Box, Inc.*,
  No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ...............................10

*Valinge Innovation AB v. Halstead New England Corp.*,
  No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ................................14

*VLSI Tech. LLC v. Intel Corp.*,
  C.A. No. 6:19-cv-00254-ADA, No. 52 (W.D. Tex. Aug. 6, 2019) ....................................14

*VoIP-Pal.com, Inc. v. Twitter, Inc.*,
  No. 216CV02338RFBCWH, 2018 WL 3543031 (D. Nev. July 23, 2018) .........................8

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (*en banc*) ...........................................................................4, 9

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018) ..........................................................................................4

## Statutes

28 U.S.C. 1406(a) ........................................................................................................................1

28 U.S.C. § 1400(b) ...........................................................................................................3, 4, 5, 8

28 U.S.C. § 1404(a) and 1406(a) ..............................................................................................1, 4

28 U.S.C. § 1406(a) .........................................................................................................4, 8, 12

## Other Authorities

Fed. R. Civ. P. 45(c)(1)(A) ..........................................................................................................11

Fed. R. Civ. P. 12(b)(3) ......................................................................................................1, 4, 8

Venue is not proper in this District. Under *TC Heartland LLC v. Kraft Foods Group Brands LLC*, venue in a patent case is only proper where: (1) the defendant resides, or (2) in a district in which the defendant has a regular and established place of business and has committed acts of infringement. Defendant Maplebear Inc. d/b/a Instacart ("Instacart") does not reside and has never resided in this District and has no regular and established place of business in this District. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. 1406(a), Instacart respectfully requests that this Court dismiss all claims in Plaintiff GreatGigz Solutions LLC's ("GGS") Complaint for improper venue. In the alternative, Instacart respectfully requests that the Court transfer venue of this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) and 1406(a).

Additionally, GGS's Complaint fails to plead sufficient factual support for its allegations of willful infringement. Accordingly, GGS's willful infringement allegations are insufficient and should be dismissed.

## I.      STATEMENT OF ISSUES

Pursuant to Local Rule CV-7(a)(1), Instacart identifies the following issues to be decided by this dispositive motion to dismiss under Rule 12(b)(3):

1.      Whether venue in the Western District of Texas is proper when Instacart does not reside in the District or have a regular and established place of business in the District.

2.      Whether the Court should dismiss this case or transfer it to the North District of California, where venue is proper.

3.      Whether the Court should dismiss GGS's willful infringement allegations as insufficiently pled.

## II.     FACTS

Instacart neither resides nor has a place of business in the Western District of Texas—its platform is simply accessible across the United States. (Nielsen Decl. at ¶¶ 4-5.) Instacart has never employed any employees at a place of business in the Western District of Texas. (*Id*. at ¶ 9.) Instacart does not own, operate, or control any data centers in this District. (*Id*. at ¶ 7.) As a communications and logistics platform, Instacart's physical ties to the District are transient: Instacart leases temporary storage space from Public Storage to support its shopper community and has a short-term WeWork membership in Austin for meetings and remote employees that has not been accessed in months. (*Id*. at ¶¶ 10-11.)

On August 14, 2020, GGS filed its Complaint against Instacart, alleging infringement of U.S. Patent Nos. 6,662,194, 7,490,086, 9,760,864, and 10,096,000 (the "Asserted Patents"). (Dkt. No. 1.) GGS alleges that Instacart's website, ancillary sites, and mobile applications (the "Accused Products and Services") infringe one or more of the claims, directly or indirectly, of the patents. (*Id*. at ¶¶ 45, 48-55, 62-69.) GGS acknowledges that Instacart is a Delaware corporation with a principal place of business in the Northern District of California. (*Id.* at ¶ 2.) Nevertheless, GGS's Complaint asserts that venue is proper in the Western District of Texas because Instacart has employees in this District. Instacart has 2,134 full and part-time employees, interns, and fixed-term contractors throughout the United States, of which 882 people work from Instacart's San Francisco office. (Nielsen Decl. at ¶¶ 12-13.) Instacart's other U.S.-based employees work from its other core U.S. office in Atlanta or remotely (including remote corporate employees and other remote employees based at partner retailer locations). (*Id*. at ¶ 13.) Instacart has only 15 full-time employees employed in the Western District of Texas, all of them working remotely and none at an Instacart place of business. (*Id*. at ¶ 14.)

Instacart's operations relevant to the product design, business, and financial aspects relating to the Accused Products and Services primarily occur in its San Francisco Bay office. (Nielsen Decl. at ¶ 19.) Each of the Accused Products and Services was originally designed and developed, and continues to be maintained, by employees in Instacart's San Francisco office. (*Id*.) Thus, the Instacart employees most knowledgeable about the design, business, and financial aspects of the Accused Products and Services—including the leads for the product, engineering, marketing, and financial analysis—are located in or near San Francisco. (*Id*.) The same is true for Instacart employees most knowledgeable about the finances, accounting, and revenue associated with the Accused Products and Services. (*Id*.) As a result, the overwhelming majority of Instacart's relevant information, data, and documents, including the computer source code and technical documents for the Accused Products and Services, is generated and maintained in its San Francisco office. (*Id*. ¶¶ 20).

In light of the COVID-19 pandemic, Instacart has adopted a corporate policy prohibiting all business travel until further notice. (*Id.* at ¶ 21.) Even if the effects of the pandemic recede and Instacart's corporate travel prohibition returns to normal between now and a trial in this case, Instacart would be greatly inconvenienced by having to attend trial outside the Northern District of California. *Id*.

### III.   LEGAL STANDARD AND APPLICABLE LAW

In a patent case, venue is proper only "[1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). When applied to domestic corporations, the first prong of section §1400(b) generally "refers [] to the State of incorporation." *TC Heartland* at 1521. Only "the judicial district where the principal place of business is located" is the district in which it

3

"resides" for venue purposes. *In re BigCommerce, Inc.*, 890 F.3d 978, 982 (Fed. Cir. 2018). The second prong of Section 1400(b) requires that "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). All three factors of the second prong must be met in order for venue to be proper in a specific district. *Id*.

Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of proving whether venue is appropriate shifts to plaintiff. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *L & H Concepts LLC v. Schmidt*, No. 6:07 CV 65, 2007 WL 4165259, at *1 (E.D. Tex. Nov. 20, 2007) (citing *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002)). If venue is improper under Section 1400(b), the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Alternatively, if the Court chooses not to dismiss the action, it can transfer to a District where venue is proper and where this action could have been brought. 28 U.S.C. § 1406(a); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*).

## IV.   ARGUMENT

Venue is improper for Instacart in this District under either prong of § 1400(b). Instacart does not "reside" in the Western District of Texas under the first prong of § 1400(b) because Instacart does not reside and never has resided in the Western District of Texas. It also does not have, and never has had, **any** place of business in the District. (Nielsen Decl. at ¶¶ 4-8.) Instacart therefore respectfully requests that the Court grant its motion and dismiss this case. FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a). In the alternative, Instacart respectfully requests that the Court transfer venue of this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) and 1406(a). Additionally, GGS's willful infringement

allegations are insufficient and should be dismissed because GGS failed to plead pre-suit knowledge of any of the Asserted Patents.

### A.   Instacart Does Not "Reside" in the Western District of Texas

Instacart does not reside in the Western District of Texas for the purposes of the first prong of §1400(b). Instacart is incorporated in Delaware and maintains a place of business in San Francisco, California. (Nielsen Decl. at ¶ 4.) San Francisco, California is located in the Northern District of California. As a result, under §1400(b), Instacart resides in the Northern District of California or the District of Delaware. Instacart's residency under § 1400(b) is uncontroverted in GGS's Complaint.

### B.   Instacart Has No "Physical Place" or "Regular and Established Place of Business" in the Western District of Texas

Instacart has no "regular and established place of business" in the Western District of Texas for the purposes of the second prong of §1400(b). Instacart owns no property, real or otherwise, in the Western District of Texas. (*Id*. at ¶¶ 6-7.) Instacart has no bank accounts or telephone listings in the Western District of Texas. (*Id*. at ¶ 8.) And Instacart has no employees or contractors in the Western District of Texas working at an Instacart place of business (there is none). (*Id*. at ¶ 9.)

The Federal Circuit in *In re Cray Inc*. determined that for a defendant to have "a 'regular and established place of business' in a certain district within the meaning of 1400(b)" three conditions must be true: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d 1355, 1360 (Fed. Cir. 2017). Importantly, "[i]f any statutory requirement is not satisfied, venue is improper under §1400(b)." *Id*. As discussed below, Instacart does not have a "regular and established place of business" in this District, as required by *In re Cray*.

The Federal Circuit requires a "physical place" that is "regular and established," explaining that a business may be regular if it "operates in a steady, uniform, orderly and methodical" manner. *In re Cray*, 871 F.3d 1355, 1362 (internal citation omitted). The Federal Circuit further explained that the place of business is "not transient" and "must for a meaningful time period be stable, established." *Id.* at 1363. As detailed above, Instacart has no place of business in the Western District of Texas. (Nielsen Decl. at ¶¶ 5-8.) Although Instacart has a short-term WeWork *membership* in Austin, Texas, this membership does not amount to any leased "physical place," as required by the Federal Circuit. Instead, Instacart's membership agreement with WeWork merely allows use of WeWork's services, such as access to WeWork shared office space and access to WeWork members-only events, benefits, and promotions. (*Id.* at ¶¶ 10.) It was last accessed by an Instacart employee on June 5, 2020. (*Id.*) This sporadic use of WeWork services "cannot create venue." *See In re Cray*, 871 F.3d 1355, 1362 ("[S]poradic activity cannot create venue"); *see also Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941) ("A 'regular place of business' is, obviously, a place where such business is carried on 'regularly' and not merely temporarily, or for some special work or particular transaction." (quoting *Winterbottom v. Casey*, 283 F. 518, 521 (E.D. Mich. 1922))).

The only other Instacart presence in the Western District is storage space that is not a "regular and established place of business." At least one court has explicitly found this to be the case where the storage unit is not used to actually carry out the defendant's business:

> [S]torage units are not 'regular and established places of business,' because Plaintiffs have failed to demonstrate that Defendant 'actually engage[s] in business from [either] location.' The question is whether the storage units are 'location[s] at which one carries on a business.' They are not. While Defendant's customer service reps may 'typically' retrieve materials from the storage units to visit customers within this District, no 'employee or agent of [Defendant actually] conduct[s] business at' the storage units, whatsoever.

*CDx Diagnostic, Inc. v. United States Endoscopy Grp., Inc.*, No. 13-CV-5669(NSR), 2018 WL 2388534, at *3 (S.D.N.Y. May 24, 2018) (citations omitted). Instacart does not carry out its business from the storage space.

Even if GGS could demonstrate the existence of a regular and established physical place of business (it cannot), GGS's remaining venue-related allegations fail under the third *Cray* element. For the third and final condition, the "regular and established place of business" must be "the place of the defendant, not solely a place of the defendant's employee." 871 F.3d 1355, 1363. As detailed above, Instacart has no place of business for an employee to work in the Western District of Texas. (*See* Nielsen Decl. at ¶¶ 5-9.) GGS relies on a blog post relating to Instacart's business expansion in Houston and Austin, alleging that Instacart has a "regular and established place of business" in the Western District of Texas because it "has employees residing within this District." (Dkt. 1, ¶ 5-6.) However, out of the 2,134 Instacart employees in the United States, only 15 reside in the Western District. (Nielsen Decl. at ¶ 12, 14.) These individuals work remotely, and not at an Instacart place of business. Instacart does not own or lease these employees' homes or reimburse any of the employees' housing costs. (*Id*. at ¶¶ 14-15.) Instacart does not gain any benefit from having these individuals reside within this District, and they are not required to obtain prior permission from Instacart if they wish to move to one of Instacart's several U.S. offices. (*Id*.) The fact that Instacart currently has a WeWork membership does not change this analysis.

In a near-identical scenario, this Court's sister Division applied the *Cray* test and found that a defendant's 46 remote employees—more than four times the number of remote employees at issue here—were insufficient to make venue proper in this District. *See Bd. of Regents, the Univ. of Tex. Sys. v. Boston Sci. Corp.*, No. 1:17-cv-1103, ECF No. 27 at 2 (W.D. Tex. Mar. 12, 2018) (J., Yeakel, *aff'd*, 936 F.3d 1365 (Fed. Cir. 2019). Other district courts have arrived at a similar

result. *See, e.g.*, *CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-CV-01554-M, 2019 WL 1070869, at *4 (N.D. Tex. Jan. 16, 2019); *VoIP-Pal.com, Inc. v. Twitter, Inc.*, No. 216CV02338RFBCWH, 2018 WL 3543031, at *4 (D. Nev. July 23, 2018) ("there is no evidence that [defendant's remote software engineer's] work is consumer-facing"); *Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 936 (E.D. Tex. 2017) (remote employees' homes are not "under the control of Google or were ever held out as Google's places of business").

Accordingly, venue is improper for Instacart in this District under both prongs of § 1400(b). Instacart therefore respectfully requests that the Court grant its motion and dismiss this case. FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a).

### C. Alternatively, This Case Should Be Transferred to the Northern District of California

Because venue is improper in this District, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). If this Court elects not to dismiss GGS's Complaint, the Court should transfer this case to the Northern District of California, where venue is proper.

District courts throughout this Circuit apply the § 1404(a) public and private convenience factors in assessing transfer under §1406(a)—with the exception that Instacart's proposed venue need not be "clearly" more convenient. *See In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164, at *4 (Fed. Cir. July 28, 2020); *CUPP Cybersecurity*, 2019 WL 1070869, at *6–7. Here, the Court should transfer this case to the Northern District of California, where Instacart is headquartered and maintains its principal place of business, and where the overwhelming majority of relevant witnesses and documents reside.

### 1. This Action "Could Have Been Brought" in the Northern District of California

This action could have been brought in the Northern District of California because that is where Instacart maintains its headquarters, conducts its business, and where it employs its employees. *In re Volkswagen of Am.*, 545 F.3d at 315.

### 2. Private Interest Factors Favor Transfer to the Northern District of California

All private interest factors favor transfer to the Northern District of California, and the Federal Circuit recently instructed transfer on similar facts. *In re Adobe*, 2020 WL 4308164.

#### (a) Cost of Attendance for Willing Witnesses

The convenience of witnesses attending trial "is probably the single most important factor in [a] transfer analysis." *Genentech*, 566 F.3d at 1345. The Federal Circuit recently highlighted this point, holding that transfer was appropriate even where a defendant maintained more than one physical office within the Western District of Texas—in stark contrast to Instacart, which has zero—because the defendant had "identified a significant number of its own employees as potential witnesses who reside in the Northern District of California." *In re Adobe*, 2020 WL 4308164, at *5. Further, in light of the COVID-19 pandemic, there is a greater importance in the 100-mile rule than ever before—no longer is distance a matter of convenience, but also may make the difference between a witness's being able to appear for trial or not. *See Uniloc 2017 LLC v. Google LLC*, 2020 WL 3064460, No. 2:18-cv-00504-JRG-RSP (E.D. Tex., 2020).

Here, the witnesses with the most knowledge of the Accused Products and Services are Instacart employees that work from Instacart's San Francisco office. Of Instacart's 2,134 United States employees, interns, and fixed-term contractors, 882 work out of its San Francisco office. (Nielsen Decl. ¶¶ 12-13.) The employees who are most knowledgeable regarding the design, development, marketing, and function of the Accused Products and Services reside within the

9

Northern District of California, including product managers, product marketing managers, engineers, designers, and staff. (*Id*. at ¶¶ 18-19.) The employees most knowledgeable about the business and financial aspects of the Accused Products and Services also reside in the Northern District of California. (*Id*. at ¶ 19) The majority of executive and management level personnel overseeing key decisions concerning the design, structure, and content of the relevant features reside in the Northern District of California. (*Id*.) While early in the case, and reserving the ability to modify, Instacart has identified 8 individuals most knowledgeable about the Accused Products and Services, all of which work from Instacart's San Francisco office. (*Id*. at ¶ 18.)

Conversely, GGS has not identified any potential witnesses with relevant knowledge residing within this District. GGS is registered in Florida and the sole inventor of the Asserted Patents resides in New York, not Texas. (Ex. A.) The Accused Products and Services were neither developed nor designed, and are not maintained, in this District. *See* Nielsen Decl. ¶ 17. As a result, Instacart would not call any of its remote workers residing in the District as a witness at trial.

### (b) Relative Ease of Access to Sources of Proof

The Federal Circuit has stated that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted). Instacart, as the accused infringer, generates and maintains the bulk of its relevant documents relating to the design, development, and maintenance of the Accused Products and Services in its San Francisco office, and maintains none in the Western District of Texas. (Nielsen Decl. ¶ 20.) This includes the majority of hard-copy documents relevant to the design, development, marketing, and function of the Accused Products and Services, as well as source code, which Instacart makes available only on a need-to-know basis.

*Id.*; *see Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *3 (W.D. Tex. June 6, 2018) (granting transfer where, *inter alia*, all "relevant hard-copy documents are stored in Northern California"); *see, also*, *In re HP Inc.*, 2020 WL 5523561, at *3 (Fed. Cir. Sept. 15, 2020) (explaining that "relative ease of access, not absolute ease of access" is the critical inquiry (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)). This factor supports transfer to the Northern District of California.

### (c) Availability of Compulsory Process

This factor weighs in favor of transfer when "a transferee venue has absolute subpoena power" over a substantial number of witnesses. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citing *Genentech*, 566 F.3d at 1345). A district court may only compel a witness to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business." Fed. R. Civ. P. 45(c)(1)(A). Importantly, Instacart is unaware of—and GGS has not identified—a single third party witness in or anywhere near the Western District of Texas.

### 3. The Public Interest Factors Favor Transfer to the Northern District of California

### (a) Local Interest

Local interests are most salient when a district is home to a party, especially the defendant, since an infringement suit "calls into question the work and reputation" of those who "presumably conduct business in that community." *In re Hoffmann-La Roche*, 587 F.3d at 1336. Since Instacart's founding in 2012, its headquarters have always been located in the Northern District of California, where it currently employs hundreds of individuals in its San Francisco office. (Nielsen Decl. ¶¶ 4, 13.) The Accused Products and Services were designed and developed at these offices within the Northern District of California, and Instacart's relevant employees are also residents of

11

that district. (*Id*. ¶¶ 17-19.) Because this case involves adjudicating the alleged acts and consequences of its own residents, the Northern District of California has a strong local interest in hearing this case. Thus, this factor favors transfer to the Northern District of California.

### (b) Court Congestion

Since venue is improper in GGS's chosen forum, the Western District of Texas, the Federal Circuit has instructed that the standard cross-district time-to-trial comparison is inapplicable here. *See In re Adobe*, 2020 WL 4308164, at *6. Moreover, "the court's general ability to set a schedule" more quickly than other courts does not speak to "whether there is an appreciable difference in docket congestion between the two forums." *Id*. That said, this District has experienced a recent deluge of new patent cases—a total of 683 complaints since January 2020—while the Northern District of California has seen only 188 new patent cases in the same period. *See* Exs. B, C.

The other judicial district where this case "could have been brought" as to Instacart is the District of Delaware, Instacart's state of incorporation. *See* 28 U.S.C. § 1406(a); Nielsen Decl. ¶ 4. Average time-to-trial statistics indicate that cases reach trial approximately four or five months sooner in the Northern District of California as compared to Delaware. *See* Exs. D, E. Additionally, the District of Delaware has seen 561 new patent cases filed this year, compared to the Northern District of California's 188 new patent cases. *See* Exs. C, F. This factor thus weighs in favor of transfer to the Northern District of California.

### (c) Familiarity with Applicable Law and Conflicts of Law

The last of the public interest factors are neutral, as Instacart is not aware of any applicable conflicts of law, and all federal courts are equally capable of applying federal patent law—particularly since the Northern District of California is no stranger to patent litigation.

Instacart's employees—past and present—reside in the San Francisco Bay Area. Only a few employees reside outside of the Northern District of California, none of whom is involved in the key design, development, and direction of the Accused Products and Services. Both private and public interest factors weigh in favor of transfer to the Northern District of California.

### D.     Allegations of willful infringement are deficient and should be dismissed.

#### 1.     GGS's allegations of pre-suit willfulness should be dismissed.

GGS's allegations of pre-suit willful infringement should be dismissed because GGS's allegation failed to plead pre-suit knowledge of any of the Asserted Patents.

GGS does not allege that Instacart knew about any of the Asserted Patents before the filing of this lawsuit—indeed, Instacart did not. *See* Dkt. 1 at ¶¶ 47, 61. This Court explained the appropriate standard to adequately plead a claim of willful infringement in *Parity Networks*:

> To state a claim for willful infringement a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent. Further, a plaintiff should plead willfulness with sufficient articulation of the relevant fact.

*Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (Albright, J.) (quoting *Valinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018)). In contrast to the complaint *Parity Networks*, which "adequately allege[d] that Defendant had knowledge of infringement prior to the filing of the complaint," GGS concedes the absence of facts to show such pre-suit knowledge by alleging only that Instacart "has been on actual notice of the ['194 Patent

13

and the '086 Patent] at least as early as the date it received service of this Original Complaint."[1] Dkt. 1 at ¶¶ 47, 61.

Because GGS has not alleged that Instacart "knew of" the '194 and '086 Patents prior to the filing of the lawsuit, GGS failed to allege at least one of the requisite components of willful allegations. *Parity Networks*, 2019 WL 3940952 at *3 ("a plaintiff must allege facts plausibly showing that ***as of the time of the claim's filing***, the accused infringer … knew of the patent-in-suit") (emphasis added); *Valinge*, 2018 WL 2411218 at *13 (granting defendants' motion to dismiss allegations of willful infringement where plaintiff did not plausibly allege that defendants had knowledge of that patents as of the date of the filing of the original complaint). GGS's allegations of pre-suit willful infringement should therefore be dismissed.

### 2. GGS's allegations of post-suit willfulness should be dismissed.

GGS's allegations also do not meet the standard for supporting a claim for willfulness based on post-suit conduct. This Court and others have dismissed claims for enhanced damages where the complaint alleges nothing more than a garden-variety patent case, as GGS has done. *See Flash-Control, LLC v. Intel Corp.*, C.A. No 1:19-cv-1107-ADA, No. 35 (W.D. Tex. Oct. 31, 2019) (dismissing without prejudice allegations regarding post-suit willfulness and citing to its decision in *Parity Networks* as the standard for sufficient allegations); *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 6:19-cv-00254-ADA, No. 52 (W.D. Tex. Aug. 6, 2019) (dismissing without prejudice an enhanced damages claim based on willful infringement); *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *3–4 (W.D. Tex. Nov. 30, 2018)  (dismissing willful infringement claim and agreeing that "the complaint does not allege any facts raising a plausible

---

[1] Instacart notes that GGS does not allege willful infringement of the '864 or '000 Patents, or that Instacart had knowledge of those patents by any particular date prior to the filing of the Complaint. Accordingly, GGS has not pled willful infringement of the '864 or '000 Patents.

14

inference of the egregious behavior required under Halo"); *see also M & C Innovations, LLC v. Igloo Prod. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) (dismissing willful infringement claim as the patent claims were "garden-variety").

As discussed above, GGS's only allegation of Instacart's actual knowledge of the patent is by way of the Complaint. (Dkt. 1 at ¶¶ 47, 61.) GGS's remaining willfulness allegations simply state without explanation that Instacart continues to willfully infringe. *See id.* at ¶¶ 57, 71 (continuing allegedly infringing activities "post-notice" of the Asserted Patents "is willful wanton, malicious, bad-faith, deliberate, and/or consciously wrongful").

GGS alleges no facts to support a plausible inference that Instacart knew or should have known that it was purportedly infringing the '194 Patent or the '086 Patent. Nor does GGS identify any specific "willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful" act on the part of Instacart. In short, GGS fails to provide any factual support or reasoning for its bald allegations of willful infringement, much less "a sufficient articulation of the relevant facts." *See Parity Networks*, 2019 WL 3940952 at *3.

Because GGS fails to plead sufficient factual support for its allegations of willful infringement, GGS's willful infringement allegations are necessarily insufficient and should be dismissed.

## V.   CONCLUSION

For the reasons set forth above, Instacart respectfully requests that this Court grant its motion to dismiss.


Dated: October 27, 2020

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ Ricardo J. Bonilla*
    Neil J. McNabnay
    macnabnay@fr.com
    Texas Bar No. 24002583
    Ricardo J. Bonilla
    rbonilla@fr.com
    Texas Bar No. 24082704

    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)

***Attorneys for Defendant***
***Maplebear Inc. d/b/a Instacart***

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served on this 27th day of October, 2020, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Ricardo J. Bonilla*
Ricardo J. Bonilla