## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

**GREATGIGZ SOLUTIONS, LLC,**

        Plaintiff

        v.

**MAPLEBEAR INC. D/B/A INSTACART**

        Defendant

**Case No. 6:20-cv-00737-ADA**

**JURY TRIAL DEMANDED**

## BRIEF IN OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND IMPROPER VENUE, OR IN THE ALTERNATIVE TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

Plaintiff GreatGigz, LLC ("Plaintiff" or "GreatGigz") respectfully submits this Brief in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Transfer [Dkt. No. 11] ("Defendant's Motion"). As will be shown in greater detail herein below, venue in the Western District of Texas ("WDTX") is proper under § 1404(b). Further, Defendant's Motion does not establish that the Northern District of California ("NDCA") is clearly more convenient. As such, Defendant's Motion to Dismiss for Improper Venue, or on the alternative to transfer to NDCA, should be denied. With regards to Defendant's arguments regarding Plaintiff's willful infringement allegations, Plaintiff has filed an Amended Complaint concurrently herewith in which the willful infringement allegations have been removed. Thus, Defendant's Motion to Dismiss for Failure to State a Claim is now moot.

## <u>TABLE OF CONTENTS</u>

I.     Venue is Proper under 28 U.S.C. § 1400(b) .................................................................1

       A.     Retail Partner Stores Qualify as "Regular and Established Places of Business"...........1

       B.     Where Employees Work Qualifies as "Regular and Established Place of Business" ...3

II.    Transfer is Not Warranted Under 28 U.S.C. § 1404(a) ...............................................4

       A.     Private Interest Factors Weigh Against Transfer to NDCA .......................................5

              1.     Relative Ease of Access to Sources of Proof .....................................................5

              2.     Availability of Compulsory Process .................................................................6

              3.     Cost of Attendance for Willing Witnesses........................................................6

              4.     Practical Problems ..........................................................................................8

       B.     Public Interest Factors Weigh Against Transfer ...........................................................8

III.   Allegations of Willful Infringement .........................................................................9

IV.    Conclusion      ..................................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.,*
    358 F.3d 337 (5th Cir. 2004) ................................................................................4

*ADS Security LP v. Advanced Detection,*
    2010 WL 1170976 (W.D. Tex. Mar. 23, 2010) ......................................................6

*Alacritech Inc. v. CenturyLink, Inc.,*
    2:16-cv-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).....................7

*Broadband v. Dish Network,*
    6:19-cv-00716-ADA, Order dated April 20, 2021 (W.D. Tex. April 20, 2021).......8

*In re Genentech, Inc.,*
    566 F.3d 1338 (Fed. Cir. 2009)...........................................................................7, 8

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ................................................................................4

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ................................................................................4

*ParkerVision, Inc. v. Intel Corp.,*
    6:20-cv-00108-ADA at Dkt. No. 73 (W.D. Tex. Jan. 26, 2021) .............................2

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981)..............................................................................................5

*QR Spex, Inc. v. Motorola, Inc.,*
    507 F. Supp. 2d 650 (E.D. Tex. 2007)..................................................................5

*Salazar v. HTC Corp.,*
    2017 WL 8943155 (E.D. Tex. 2017) .....................................................................6

*Uniloc 2017 LLC v. Apple, Inc.,*
    6:19-cv-00532-ADA at Dkt. No. 72 (W.D. Tex. June 19, 2020) .............................7

*Weatherford Tech. Holdings, LLC v. Tesco Corp.,*
    No. 2:17-CV-00456-JRG, 2018 WL 4620636 (E.D. Tex. May 22, 2018) ...............5

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964)..............................................................................................4

*VLSI Tech. v. Intel Corp.,*
    2019 WL 8013949 (W.D. Tex. 2019).....................................................................6

I.       **Venue is Proper under 28 U.S.C. § 1400(b)**

      A.       **Retail Partner Stores Qualify as "Regular and Established Places of Business"**

Defendant insists that they do not reside in the Western District of Texas for purposes of the second prong of § 1400(b) because they allegedly do not have a "physical place" that is "regular and established" in the Western District of Texas. *See* Defendant's Motion at 5. Defendant goes to great lengths to explain how their storage places in the Western District of Texas is not a "regular and established place of business" and how their "sporadic use of WeWork services 'cannot create venue'". *Id* at 6-7. (citing *In re Cray*, 871 F.3d. 1355, 1362).

However, Defendant ignores the most compelling fact in connection with this issue. Defendant is utilizing the offices of retail partner stores in WDTX on a consistent and regular basis *to train and supervise their own employees*. See Figure 1 below, which is a July 20, 2105 announcement by Defendant on Defendant's blog site (emphasis added):

## We've Extended the Employee Option to our Independent Contractors in Houston and Austin, Texas

Today we've announced that we are offering our contractor in-store shoppers in Houston and Austin, Texas, the option of applying for new employee roles with expanded responsibilities. Currently, we have several hundred in-store shoppers across Houston and Austin, embedded in retail partner stores.

The employee option already exists for our in-store shoppers in Boston, Chicago, Atlanta, Miami and Washington, DC. With today's Texas additions, we now offer this option in 7 of its 16 cities, with more to come. After making in-store shoppers Instacart employees, we plan to provide additional training and supervision that's been proven to boost the efficiency and quality of order picking, resulting in even higher customer satisfaction.

Based on our experience in other cities, we expect approximately three-quarters of our Houston and Austin in-store shoppers to apply for these part-time positions. Those who choose to remain contractors can move into driver or combined driver/shopper roles.

"We're pleased to expand the employee model into Houston and Austin," said Apoorva Mehta, founder and CEO of Instacart. "Our order volume in both cities is growing quickly, and we want to ensure that our customers have the best possible experience. Attracting, training and retaining high-quality shoppers is key to that effort."

We are proud to offer part-time employees competitive wages that exceed the local minimum wage in each of its markets.

Figure 1[1]

In Defendant's own words, as of July 20, 2105, they were "offering [their] contractor in-store shoppers in Houston and Austin, Texas, the option of applying for *new employee roles with expanded responsibility*" and that they have "several hundred in-store shoppers across Houston and Austin, *embedded in retail partner stores*." (emphasis added). Defendant is "making in-store shoppers Instacart employees" in order to "provide additional training and supervision" for the purpose of obtaining "higher customer satisfaction." As of July 20, 2105, Defendant expected "approximately three-quarters

---

[1] Source, as visited on May 18, 2021: https://instacart.wordpress.com/tag/texas/

of [their] Houston and Austin in-store shoppers to apply for these part-time positions."

Defendant's Motion asserts that "out of the 2,134 Instacart employees in the United States, only 15 reside in the Western District"  and that they "work remotely and not at an Instacart place of business." *See* Defendant's Motion at 7. This statement is in direct contradiction to Defendant's blog post (Figure 1) above, which unequivocally states that Defendant plans to "expand the employee model into Houston and Austin" and expected "approximately three-quarters of [their] Houston and Austin in-store shoppers to apply for these part-time positions." It appears that Defendant is ignoring the Houston and Austin shoppers that they converted from independent contractors to Instacart employees.

Defendant attempts to have their cake and eat it too. They take advantage of their retail partners' stores by embedding their new employees in those stores for the purpose of training and supervision, and for the purpose of having well-trained Instacart shoppers in the Houston and Austin areas, but then they state that they have "no regular and established" places of business in the Western District of Texas. In other words, they are reaping the benefits of regular and established places of business in this District in order to service customers in this District, while at the same time arguing that they should not be subject to jurisdiction in that same District for their actions.

### B.    Where Employees Work Qualifies as "Regular and Established Place of Business"

A defendant has a "regular and established place of business" in districts where their employees work, even if those employees are working from home.  *In re Cordis Corp.*, 769 F.2d 733, 735, 737 (Fed. Cir. 1985); *In re Cray*, 871 F.3d 1355, 1362 (Fed. Cir. 2017).  As long as the location of the home of the employees within the district is meaningful to the role of the employees with the defendant (for example, if the defendant conditions employment on the employees' continued residence in the district), they qualify as "places of business" of the defendant.  *In re Cray*, 871 F.3d 1355, 1363 (Fed. Cir. 2017).

In this case, the location of the homes of Defendant's employees is not only meaningful to their

role with Defendant, it is absolutely crucial as Defendant's "shoppers" must be located in the geographic area that they service. Defendant's employees located in the Western District of Texas service customers in the Western District of Texas. In Defendant's own words, as of July 20, 2105, they had "several hundred in-store shoppers across Houston and Austin, *embedded in retail partner stores*" that service customers in Houston and Austin. (emphasis added). Thus, the locations of the homes of Defendant's employees' within this District  qualify as "regular and established" places of business of Defendant.

## II.      Transfer is Not Warranted Under 28 U.S.C. § 1404(a)

Because Defendants' Motion fails to carry the "heavy burden" of establishing that the target venue is *clearly* more convenient, it should be denied. As the Court is well aware, the party moving for transfer under 28 U.S.C. § 1404(a) bears the burden of establishing good cause.  *See, e.g., In re Volkswagen of Am., Inc.,* 545 F.3d 304, 314 (5th Cir. 2008) (hereafter *Volkswagen II*).  That burden has long required a *clear* showing of *superior* convenience.  *Van Dusen v. Barrack,* 376 U.S. 612, 646 (1964).  Of course, the preliminary question under §1404(a) is whether a civil action "might have been brought" in the destination venue.  *Volkswagen II*, 545 F.3d at 312.  If so, in the Fifth Circuit, the determination of "convenience" then turns on a number of public and private interest factors, none of which can be said to be of dispositive weight.  *Action Indus., Inc. v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 340 (5th Cir. 2004).  Those factors are as follows:

Private Interest Factors include: (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process to secure the attendance of witnesses; (iii) the cost of attendance for willing witnesses; and (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (hereafter *Volkswagen I*).

Public Interest Factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized interests decided at home; (iii) the familiarity of the forum with

the law that will govern the case; and (iv) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.  *Id.*

In assessing Motions to Transfer, the Court may consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party.  *Weatherford Tech. Holdings, LLC v. Tesco Corp.,* No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018).  While the plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to that choice, the plaintiff's choice must be respected unless the transferee venue is *clearly* more convenient under the above-referenced Factors.  *Volkswagen II,* 545 F.3d at 314-315; *see also QR Spex, Inc. v. Motorola, Inc.,* 507 F. Supp. 2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy"); *ParkerVision, Inc. v. Intel Corp.,* 2021 WL 401989 at *8 (W.D. Tex. Jan. 26, 2021) (same).

## A.    Private Interest Factors Weigh Against Transfer

Plaintiff does not contest that the instant action against Defendant could have been brought in the Northern District of California ("NDCA").  Nevertheless, as discussed more fully below, the Private Interest Factors here do not clearly support transfer to NDCA.

### 1.    Relative Ease of Access to Sources of Proof

Although modern electronic data storage renders this Factor generally obsolete, the Court must look to where documentary evidence is "stored".  *Volkswagen II,* 545 F.3d at 316.  Moreover, to properly consider this Factor, parties must *describe with specificity* the evidence they would not be able to obtain if trial were held in the alternate forum.  *ParkerVision,* 2021 WL 401989 at *2 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 258 (1981)).

Defendants' Motion makes literally no effort to identify with specificity any pertinent documents it contends would be unavailable to it in Waco.  Indeed, there appear to be none.  Rather, Defendants

argue that their respective documents are purportedly "stored" in its Austin and San Antonio offices, and that they collectively have no evidence or witnesses in Waco.  Defendant alleges that it "maintains the bulk of its relevant documents" in its San Francisco office." *See* Defendant's Motion at 10. Defendant makes no representation that any relevant documents are not stored electronically.  Thus, all such electronically stored documents are equally available from Waco, Texas and renders this factor neutral as to the transfer analysis.

2.    <u>Availability of Compulsory Process</u>

With respect to this Factor, Plaintiff is in agreement with Defendants that there are no presently-known third parties for whom compulsory process may be required.  This Factor is neutral.

3.    <u>Cost of Attendance for Willing Witnesses</u>

In their Motion, Defendants focus all of their collective attention on the convenience of *party* witnesses.  *See* Defendants' Motion at 4-6.  Of course, the convenience of party witnesses is afforded very little, if any, weight.  *See VLSI Tech. v. Intel Corp.,* 2019 WL 8013949 at *4 (W.D. Tex. 2019); *ADS Security LP v. Advanced Detection,* 2010 WL 1170976 at *4 (W.D. Tex. Mar. 23, 2010) (Report and Recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010)).  Defendants identify no potential non-party witnesses at all.

In any event, while Defendants paint a picture of inconvenience for their various corporate witnesses, there is no certainty that any such witnesses would actually appear at trial.  Indeed, it is commonly true that, in patent litigation, party witnesses are secondary to experts, especially in cases such as this where the technological infringement discussion will focus on source code.  *See, e.g., Salazar v. HTC Corp.,* 2017 WL 8943155 at *5 (E.D. Tex. 2017) (crediting argument that technical testimony will likely be offered by experts, as opposed to party witnesses); *see also VLSI,* 2019 WL 8013949 at *4 ("the convenience of one key witness may outweigh the convenience of numerous less

important witnesses"). Accordingly, and given the time constraints of jury trials, the likelihood that *any* of Defendants' so-called "most knowledgeable" witnesses will appear at trial is low.

This Court has indicated that, based the Court's experience, "inventor testimony is one of the most critical witnesses that will testify live at trial. As such, the inventors being located closer to WDTX is a significant fact that weighs against transfer . . ." *Uniloc 2017 LLC v. Apple, Inc.*, 6:19-cv-00532-ADA, Order dated June 19, 2020 at 27 (Dkt. No. 72). In this case it is highly likely, if not certain, that the inventor of the asserted patents (Mr. Raymond Joao) will appear at trial. Mr. Joao would have to travel approximately 1,600 miles from his residence in Yonkers, New York to Waco, Texas, compared to approximately 2,900 miles from his residence to San Francisco. When the distance between an existing venue for trial of a matter and a proposed venue § 1404(a) is more than 100 miles, the factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled." *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)). In this case, Mr. Joao would have to travel an additional 1,300 miles if the case is transferred to NDCA.

Further, extended travel from his residence in New York to Northern California for trial is more expensive than extended travel to Waco, Texas, given the more economical lodging and food options in Waco. *See https://www.gsa.gov/travel/plan-book/per-diem-rates* (reporting per diem rates in July 2021 as follows: (i) San Francisco: $270 per day for lodging, and $76 per day for meals; (ii) Waco: $107 per day for lodging, and $56 per day for meals). Again, the convenience of Mr. Joao, as the only named inventor, is an important factor. *See VLSI,* 2019 WL 8013949 at *4 ("Because inventors' testimony is extremely important, inventors are key witnesses and the Court gives greater weight to their convenience").

In addition, Plaintiff has already retained a technical consulting expert for this matter, and he

resides in Dallas.  Plaintiff's expert is a PhD Computer Science and Engineering Professor and will be disclosed to Defendants as appropriate and in accordance with FRCP 26 and the discovery schedule in this matter.  At the Court's request, Plaintiff would be pleased to provide an *in camera* inspection of the Engagement Agreement.  The same facts exist with respect to Plaintiff's damages experts, who live and work in Houston.  Given Plaintiff's retained experts' places of residence and work, WDTX is a far more convenient and economical forum than is NDCA.  This is especially true in view of the aforementioned cost savings for lodging and meals in Waco, Texas.

Because granting Defendants' Motion would simply shift the inconveniences from Defendants' party witnesses to Plaintiff's non-party witnesses, this Factor weighs strongly against transfer.  It is a certainty that Plaintiff's technical and damages experts will appear and testify at trial, and it is highly likely that the inventor will also appear at trial.  On the other hand, it is doubtful that Defendants' background fact witnesses will appear.  Again, this Factor weighs strongly against transfer.

### 4.  Practical Problems

 This Court has previously stated that the fact that Plaintiff has filed multiple cases in the host district weighs "heavily against transfer."  *Broadband v. Dish Network,* 6:19-cv-0716-ADA, Order dated April 20, 2021 at 10.  Such is the case here. Plaintiff has filed multiple related cases, eight of which are pending before this honorable Court and involve the same patented technologies.  Efficiency thus strongly weighs against transfer and piecemeal adjudication of overlapping issues.

### B.  Public Interest Factors Weigh Against Transfer

None of the Public Interest Factors weigh *clearly* in favor of transfer.  First, with respect to the administrative difficulties flowing from court congestion, "[t]he relevant inquiry under this factor is actually the speed with which a case can come to trial and be resolved."  *In re Genentech, Inc.,* 566 F.3d 1338, 1347 (Fed. Cir. 2009).  This Factor is neutral, at best. Plaintiff has proposed a trial date of July 18,

2022 which, if adopted by this Court, would give a time to trial of approximately 14 months. The median time to trial in NDCA is 2.39 years. *See* Exhibit A. Thus, because the time to trial would be significantly faster in this District than in NDCA, this factor weighs against transfer.

Second, with respect to "the localized interests," it is uncontested that the Defendant maintains substantial a business presence throughout central Texas, including Austin and Waco.  As such, there is a significant localized interest with respect to Defendant WDTX.  Accordingly, this Factor is neutral.

Third, with respect to "the familiarity of the forum with the law that will govern the case" and "conflict of laws" Plaintiff agrees that this Factor is neutral.

### III.    Allegations of Willful Infringement

Defendant asserts that Plaintiff's allegations of pre-suit and post-suit willfulness should be dismissed. Plaintiff has filed an Amended Complaint concurrently herewith in which the allegations of willful infringement have been removed. Thus, this issue is now moot.

### IV.    Conclusion

For at least the reasons set forth above, venue is proper in WDTX under § 1404(b). Further, Defendant has failed to overcome the "heavy burden" to establish that NDCA is *clearly* more convenient than WDTX.  Even if Defendant's electronic documents are "stored" outside of WDTX, there is no serious debate that all such documents are and will be equally available to Defendant regardless of which District this case is conducted.  Further, with respect to Defendant's argument that their own party witnesses would be somewhat inconvenienced if required to travel to Waco, any such inconvenience is outmatched by the inconveniences to the non-party witnesses identified by Plaintiff, as well as the inventor Raymond Joao, if these cases are transferred to NDCA.  With no other Factor weighing heavily in Defendant's favor, Defendant's Motion must be denied.  Again, the burden on Defendant is to establish that NDCA is *clearly* more convenient.  Defendants have not carried their

burden, and these cases should remain and be tried on schedule in WDTX.


Dated:  May 18, 2021                    Respectfully Submitted

                                        */s/ René A. Vazquez*
                                        René Vazquez
                                        Virginia Bar No. 41988
                                        rvazquez@ghiplaw.com
                                        M. Scott Fuller
                                        Texas Bar No. 24036607
                                        sfuller@ghiplaw.com
                                        Randall Garteiser
                                        Texas Bar No. 24038912
                                        rgarteiser@ghiplaw.com

                                        **GARTEISER HONEA, PLLC**
                                        119 W. Ferguson Street
                                        Tyler, Texas 75702
                                        Telephone: (903) 705-7420
                                        Facsimile: (888) 908-4400

                                        **ATTORNEYS FOR PLAINTIFF
                                        GREATGIGZ, LLC**